12-2528 Thomas Hill v. Cindi Curtin. Oral argument is not to be seen. 20 minutes per side. Mr. Volchok for the appellant. May it please the court, Daniel Volchok, appointed counsel for the appellant Thomas Hill, would like to reserve 6 minutes for rebuttal please. That's fine and you may proceed. Mr. Hill challenges the Michigan court's denial of his request to represent himself at his criminal trial. He made that request without seeking a continuance as soon as he realized that his various other efforts over the preceding weeks to have his defense presented in the way that he wanted had failed and thus that self-representation was his only option left in this regard. The Michigan Supreme Court's upholding of the denial of Mr. Hill's request warrants habeas relief for two independent reasons. It resulted from an unreasonable application of clearly established federal law and it involved an unreasonable determination of the facts. Turning first to unreasonable application. Parties agree that it is clearly established federal law under Feretta v. California and its progeny. Both that criminal defendants have a fundamental constitutional right to represent themselves at trial and that that right can be denied only if there is a sufficient government interest in doing so. Here there was no such interest and hence the denial of Mr. Hill's request was objectively unreasonable. Counsel, what you're saying may very well be true, but that right is not absolute, is it? It's not without limitations. A court can, for appropriate reasons, deny that right of self-representation, correct? In appropriate circumstances. What made it unreasonable in this case? Because there was no legitimate government interest in denying the right. And as with every other right, and no right is absolute, the First Amendment and so on and so forth, every right can be limited under appropriate circumstances and the Supreme Court has said this right is no exception. If there is a sufficiently strong government interest in denying a defendant's request to represent himself, then the right may be denied. But here there was no such right. Now in contending otherwise, the government points primarily, excuse me, the warden points primarily to the government's interest in the integrity and efficiency of the trial. And the Michigan Supreme Court likewise appeared to invoke this interest in stating that granting Mr. Hill's request would have disrupted the proceedings. Now integrity and efficiency is certainly a legitimate interest in the abstract. But here it could not possibly justify denying Mr. Hill's request because granting the request would need not have undermined that interest. In arguing otherwise, the warden suggests that granting Mr. Hill's request would have necessitated a delay in the trial. But as a legal matter, it's clear beyond reasonable dispute that the trial judge would have had discretion to grant Mr. Hill's Ferretta request while denying any continuance. And as a factual matter, Mr. Hill never requested a continuance, so there is no basis to conclude that any delay in the trial would have been necessary. What would have happened if he'd made the request after voir dire had started? So, Your Honor, many courts that have looked at this have drawn a bright line at the beginning of voir dire or what they have called meaningful trial procedures. And the rationale there is that once the jury has entered the courtroom, once they have seen the- Voir dire is not the jury, potential jurors. Potential jurors, indeed. But the people who will eventually become the jury are in the courtroom observing the proceedings, seeing the defendant represented through counsel. In that setting, you can just say untimely, move on. No other explanations needed. What I would say, Your Honor, is that in those circumstances, it would be much more difficult for a habeas petitioner to come in and say there was no sufficient government interest. If that's true, it seems, you know, the minute before trial is just as disruptive. Everyone's outside waiting. I just don't quite understand why one changes the calculation. They're both quite untimely, and I'm just not sure you suddenly need a hearing to figure this out. We're not submitting, to be clear, Your Honor, we're not submitting that there needs to be any hearing. But the difference between before jurors have entered the courtroom and after several courts have pointed out is before the jurors have come in, they have not seen the defendant represented by counsel. There's no possibility of juror confusion from a switch from representation by counsel to self-representation. No possibility of distraction from the evidence. The judge does not have to explain to the jury what's going on. From the outset, if this request is made before jurors ever enter the courtroom, jurors will only have seen the defendant representing himself. And McCaskill made this point as well, the notion that hearing multiple voices for the defendant may undermine the objectives of FRERETA. So that is the bright line that courts have drawn. I respectfully submit this court does not need to get into a bright line. But, Your Honor, back to your point that it is just as untimely. I respectfully submit that it is not untimely in all circumstances if it's being made on the morning of trial. I think as a matter of terminology, we need to be clear about what we're saying when we say that a request is untimely. One possibility is that it was made after some clear, pre-imposed deadline. That's not what's going on here. Michigan law is actually quite to the contrary. In People v. Anderson, Michigan Supreme Court had said there is no bright line time by which FRERETA requests may be made. It specifically rejected a request from the people in that case to establish such a bright line at the beginning of trial. Here, of course, we would be on the other side of that line in any event. But if you don't have that and you say it's untimely, well, what are you saying? We submit that you are saying that it is being deemed untimely because of its effects, because of the impact that it will have on the proceedings. And, again, there simply is no basis in this record to find that there would have been any disruption in the proceedings had Mr. Hill's request been granted. The trial judge certainly would have been within her discretion, as I said, to grant a continuance. She also would have been within her discretion to appoint standby counsel to essentially say to Mr. Hill's trial counsel, you're no longer conducting this case. You can serve as standby counsel. Why don't you and Mr. Hill, in essence, switch seats? So there would not have had to have been any delay. There would not have had to have been any other sort of disruption. And one other point that the trial judge invoked in saying, here's why I'm going to deny this request, is that I, the trial judge, would have to instruct Mr. Hill during the trial on courtroom protocol. I submit that is clearly foreclosed by Supreme Court precedent. Supreme Court has made clear, both in McCaskill and then again in Martinez, that there is no constitutional right to instruction from the trial judge. That someone who is representing him or herself need not receive any instruction of any kind from the trial judge. So for the trial judge here to say, and for the Michigan Supreme Court to uphold the denial, based on the notion that the trial judge would have had to instruct Mr. Hill during the proceedings, and then that constitutes the sort of disruption that allows for the denial of a Hill, of a Faretta right, excuse me, is objectively unreasonable. Your reading of what the trial court said is not the only possible reading. I mean, it seems to me that the trial court could just as easily be interpreted to have said that because he had not had an advance opportunity to counsel with the defendant about how the proceedings would go and what to expect, he would have to do it during trial, which would be disruptive. I mean, I think it was the prior, I would read it as a deprivation of the opportunity to talk with the defendant about these things prior to the day of trial. I gather that's contrary to your reading. I'm sorry, Your Honor. I may not quite be understanding the question. The, when you say denial of the opportunity to consult with the defendant before trial? I thought that the trial court was saying, had you asked before this day, this moment, I could have talked to you about what to expect in the proceedings. I could have, you know, counseled with you about making of objections. Not that the court was required to, but that I would have had an opportunity to do it. But your not asking earlier means that that opportunity is lost and any instruction would have to be during trial, which would not be appropriate. It certainly could be read that way, Your Honor. But if the judge's conclusion was that that would not be appropriate, then the proper course is to grant the request and not to provide those instructions during trial. That is, as I was discussing a moment ago, clearly permitted under Supreme Court precedent and therefore does not provide a basis for denying Mr. Hill's Feretta request. Again, you need a sufficiently strong government interest. Otherwise, Feretta says, when you make that request and are advised of the pitfalls of doing so and the judge is satisfied that you're waiving your right to counsel knowingly and voluntarily, then your request must be granted. Again, in the absence of a sufficiently strong government interest. Now, there are, I think, some intimations in the warden's brief and as well in the perhaps Michigan Supreme Court's decision that, and this may go to your question, Judge Gibbons, that just having someone come in at the last minute, so to speak, and make a request would be disruptive to the proceedings in the sense that someone would be going to trial without adequate preparation and background. I submit it's clear under Feretta itself that that is not the sort of disruption that allows for the denial of a request for self-representation. If you look at Feretta, the court specifically says, we are told that if defendants are given the right to represent themselves, some of them will cause disruption. That word is actually in the opinion. This is footnote 6 of Feretta. And the court responds, well, first the court says, there's been 200 years of this right and we don't see this as a very serious problem. But then the court goes on to say, a trial judge can terminate the right of self-representation if a defendant intentionally engages in serious and obstructionist misconduct. That's the standard the Supreme Court laid down for the type of disruption that could justify the denial of a Feretta request. Here there is simply nothing in the record I submit that would allow a finding or a conclusion that Mr. Hill would have engaged, deliberately engaged in serious and obstructionist misconduct. Nor is there anything in the record I would submit that would allow a finding that here you had a defendant who was trying to game the system, trying to engage in improper delay. As we pointed out, he never requested a delay. At the time he made his Feretta request, never requested a continuance. So even putting aside the point mentioned earlier, that the trial judge would have been well within her discretion to deny any such request, there's simply no basis for finding that here was a defendant who was intending... Would a state have authority under Feretta and the other cases to say, you know, we basically have a rule, you've got to invoke this right more than three days before trial because that's the only way to properly assess whether to grant you the right and so forth. Could they do that? Here's what I'll say, Your Honor. I know I said this to you a moment ago. But I think that it would be virtually impossible, if there were a preexisting rule as you say, it would be virtually impossible for a habeas defendant to come in and challenge the denial of a request made after that deadline, certainly where there's no good reason. Because then you have a legitimate government interest in the government in ensuring compliance with its preexisting deadline statutes, whether by statute or case law. I think you might still... I'm sorry, Your Honor. The preexisting policy seems to be very similar to the policy that the judge used in a common law sense of saying no, not now, too late. Oh, no, Your Honor. It's a very different situation when the defendant is on notice beforehand that this deadline is in place, as opposed to the way we phrased it in our supplemental brief, creating an arbitrary deadline after the fact and then enforcing it against someone who had no reason to know of its existence. At that point, you don't have the legitimate government interest in enforcing compliance with preexisting statutes and court orders. If I could finish the answer to the previous question, Your Honor, I think a defendant might... I said a defendant couldn't come in on habeas, would have a very difficult time coming in on habeas and challenging that sort of rule that you outlined. I think it might be challengeable on direct review. The question then would be, does the government... Is that sort of an arbitrary deadline? I think the way you phrased it might provide an adequate defense. But of course, here we're on habeas review, and so I don't think that would be challengeable. But we simply don't have that here. We don't have any preexisting court order or statutory deadline. As I said before, Michigan case law is directly to the contrary, and the Chief Justice of the Michigan Supreme Court pointed this out in his dissent. Michigan had long had in place a rule that... or I should say had rejected any rule that would require Faretta requests to be brought up at the last moment. So... Has Michigan rejected it in the Anderson case? Correct, Your Honor. Is there any other precedent or rule that you would point us to that's relevant on this? The Michigan Supreme Court has stood by the Anderson rule. There are subsequent cases. We point to the Michigan dissenting justices' citation of them in our opening supplemental brief, so I think it's quite clear that rule has been in place all along. And the Michigan Supreme Court here, of course, cited Anderson and gave no indication whatsoever that it was overruling that decision, which I think, if nothing else, makes clear that it was not relying on any sort of per se timing rule. It was not resting, in other words, on the fact that Mr. Hill's request came on the morning of trial. Rather, it rested on the suggestion that because of its timing, there would have been this burden on the trial judge, inconvenience to the trial judge, and disruption of the proceedings. Both as a matter of law, and we submit as a matter of fact, none of those findings withstand scrutiny. And unless the court has further questions,  Okay. Thank you, Mr. Chief Justice. Thank you. Good afternoon. Aaron Lindstrom for the State of Michigan. Chief Judge Cole, and may it please the Court. There's a narrow legal question before the Court today. Under AEDPA, does the Michigan Supreme Court's holding, is it an unreasonable application of FRERTA? That's the only case that they're relying on. The holding of FRERTA is itself a very narrow holding. It says, under these circumstances, there's a denial of the Sixth Amendment right. And the circumstances that are laid out repeatedly in the FRERTA opinion are the fact that the request was made weeks before trial. That's emphasized a number of times in the opinion. A number of courts, including this court, have recognized that fact. So the question, the holding of FRERTA is very narrow. And I'll note that my friend on the other side is not relying on the holding. He's relying on general principles. General principles, of course, in the AEDPA context, the more general the principles, such as the right to represent yourself, the more leeway judges have to disagree on that point. Even though the holding, well, factually, the request came weeks ahead of the trial, in this case, this case is factually different. But here, from the preliminary hearing to the actual trial, you had a total of about 60 days, correct? From July to September. And in each appearance before the court, even though there was acrimony between counsel and the defendant, this always resulted in the judge telling the defendant and counsel to go talk and see if you all can't work this out. That happened every appearance in court. And wasn't it only on the trial date when the defendant realized that his expectation from counsel was not fulfilled? And at that point he said, I just want to represent myself because I can't trust this guy. He's not doing what he said. So under those circumstances, how do you get that request in earlier? Well, I think the point that it was on the very day of trial just confirms the factual finding that the Michigan Supreme Court made that it would have disrupted the trial. Because if somebody is on the morning of trial, they don't know what motions are before the court, that means that they're not prepared to go to trial. He would have, you know, the first thing, I think the best reading of the record, he fired his counsel because his counsel didn't make certain motions that Hill thought were critical to his case. He thought to win his case these motions had to be before the court. But at that point the motions deadline was gone. So he could not file a motion at that point. So why would it disrupt the trial to have the defendant stand where he stood, but as counsel opposite says, have standby counsel there to assist with those things that the court was concerned about. Why would that disrupt the trial? I think it would be quite common in the Wayne County District Courts to allow him to make the motion anyway. If he had been allowed to represent himself, even though the deadline has passed, it's often the case he'd still be able to make the motion. And I think the reasonable interpretation of the record is the first thing he would have done is he would have raised these motions that are the very reason that he fired his counsel. And raising these motions would have taken time. He hadn't known about them in advance, that they hadn't been provided. If you accept his account, that means he would have had to research these multiple issues that he said his counsel failed to present. He would have had to present those to the court. He would have had to get a ruling from the court. Then he would have had to adjust his trial strategy. I think that is a sufficient reason to explain why the Michigan Supreme Court reached the factual finding that it did reach. And the factual finding it reached was that it would have, granting the request, would have disrupted the trial. And that factual finding in the Michigan Supreme Court, under this court's precedent and under the United States Supreme Court's decision in Sumner, is a binding factual determination. So on the facts of this case, there's ample evidence in the record that he would have caused delay, and when there is delay, I mean, my friend agrees that if there would have been delay, that is a sufficient reason to deny a request. And I think the record shows there would have been delay. That's a good point, but to me that makes no sense if you say, if you've got counsel at the helm and the motions deadline has passed, the judge doesn't have to reopen. But all of a sudden, if you have just this pro se there and the motions deadline has passed, now the judge has got to reopen it because there's no counsel. That doesn't make any sense to me, but that's your argument and you may proceed. Well, my argument is not that the distinction between pro se and between legal counsel or retained counsel or a lawyer, but that often those motions deadlines are pretty flexible, and the fact is, I'm sorry? How does this argument tie in with the rest of the Michigan Supreme Court's one paragraph analysis, which says that the trial court also did not foreclose the defendant's opportunity to raise the self-representation issue again after jury selection, but the defendant never renewed his untimely request. So doesn't that suggest that the Michigan Supreme Court envisions that Hill could have raised the self-representation request later, and wouldn't that have been equally disruptive? I don't think the point that the Michigan Supreme Court was making is that he would have been able to raise it and succeed. I think the most charitable reading of the Michigan Supreme Court is that if he really did want to raise these motions that were the reason he fired his counsel, that he would have tried again later. So at the point during the trial... Again to raise the motions later? I think he would have, and in order to raise those motions, if his counsel in the course of litigating the case did not get to the point in the trial where these evidentiary concerns of Mr. Hill arose, if his counsel didn't do anything about it, then I would expect that Hill would have stood up and said, I need to represent myself so I can make these motions that I think are so important. Wouldn't there have been the exact same disruptive effect? I think it would have been disruptive. And yet the Michigan Supreme Court is faulting Hill for not renewing, I'm quoting now, the defendant never renewed his untimely request. How can you renew something that's untimely? Right, and I don't think the Michigan Supreme Court was just being illogical when they wrote that. I think what they were getting at is the fact that he didn't renew it may call into question whether or not he really wanted to represent himself. If he did really want to represent himself because these legal points that he was concerned about were so important to him, then you'd expect in the course of trial when his counsel failed to address these issues as he had previously failed in Hill's account to address these issues, and at that point you would expect Hill to say, again, that's not the strategy I think we should be pursuing. The strategy I think we're pursuing is different. I'd like to represent myself so that I can raise these issues. So I think that's the reasoning for the Michigan Supreme Court that doesn't just assume that they're being blatantly illogical. Does Ferretta establish a timing requirement as part of the holding of Ferretta? I apologize for my voice. No, same problem. I think Ferretta says it's limited to the circumstances where it was raised weeks before trial. Where does Ferretta say it is limited to that? It says under these circumstances at the closing paragraph on page 836. And as the Supreme Court recently repeated in White v. Woodhall, when you're talking about a clearly established rule, you have to apply it to a given set of facts. So the clearly established rule of Ferretta is that if you raise it weeks before trial, then you can't deny it. If you apply that rule to the facts here, which is he raised it on the day of trial, then a reasonable jurist could disagree about whether Ferretta requires a Sixth Amendment ruling. There's a brief that's filed by an amicus in this court, which makes the suggestion that timing should be viewed as a procedural requirement and that the way we should envision this case is that it's an adequate and independent state ground to say, as a matter of good practice in Michigan, we want to have the request for self-representation raised timely. And if that's the case, don't we analyze this case completely differently? And I recognize that this is presented in an amicus brief, and Mr. Hill was pro se when this case was before the panel, but I'd like to know your reaction to that argument from the amicus. Well, I think the argument is based on the premise that the Michigan Supreme Court applied a procedural default, and what a procedural default means is that it didn't reach the issue because of some procedural ground, but it did reach the issue. It analyzed the self-representation right, and it specifically said, we agree with the Court of Appeals that there was no Sixth Amendment violation here. It reached it on the merits, and that's why in our brief we go into explaining how the Feretta right is a right that includes timing as part of the merits analysis. The merits analysis for Feretta, if you look at Feretta, if you look at how it's explained in the Martinez case as well, timing is a component of it because you're balancing interests, and one of the interests on the government side is timing. So I don't see when the Michigan Supreme Court specifically says the Sixth Amendment was not violated, that's not a procedural default ruling. That's a decision on the merits. So the procedural default argument just has no application in this case. We're dealing with a right, and there's no... The judge did not appear to look at any of the individual circumstances, whether or not a hearing was required. There was no evaluation. There was a response. You're too late, basically. It's disruptive. There's no rule that would put anybody on notice. So isn't that a problem? I mean, how would a defendant know that... And you've got a defendant who's having some problems with his lawyer. He's trying to work it out. Judge suggests they discuss things. They work it out. He expects a motion. How would such a defendant know that if he doesn't raise this motion at a particular time, he is going to forfeit his constitutional right to represent himself? Well, I guess there's a number of points there as to, one, for forfeiting the right to represent himself. This is, again, a case where he affirmatively waived that right repeatedly. He requested counsel in July, July 3rd, before the trial. And this court has held that the right to represent yourself and the right to represent counsel are mutually exclusive. So he affirmatively waived that at the outset. And then as recently as four days before trial, he could have asked to represent himself, and he didn't. So I point that out to, again, distinguish it from the facts of FREDA. I don't want to let you answer a question,  that they are irrevocably waiving their right to self-representation? I'm saying this court has said that it is a waiver if you request. In the Moore v. Haviland case, the majority opinion says that. So it is a waiver. And apparently it's a waiver where there must be some freedom to go back and forth because you can request it at some point later. But the rule that as soon as you uncover deficient performance, what if that happens during closing argument? That approach would completely eliminate the ability to have any timeliness requirement because that would be the first opportunity they had to raise it. So if there's no – if the fact that you've just discovered it is a sufficient reason to raise it at any point, then you could never have any timing rule. But it also doesn't leave him without any recourse. If on the morning of trial your counsel is failing to raise important motions that you're convinced are going to change the outcome of your case, then you might have a pretty good argument for ineffective assistance of counsel. You don't get to represent yourself, but then you'll be able to fix this later because if these motions really were as important as you thought they were so they really would have changed the outcome of the case, then you would be able to win an ineffective assistance of counsel claim. Should we be looking at this on a case-by-case basis? Or are you saying, as Judge Sutton proposed, can they have a rule? And if they're going to have a rule, do they need to have a rule? Or is it simply the case that any judge at any time, as long as it's not unreasonable on its face, can say you're too late? Well, I guess as to the fact if there were a rule, both me and my friend on the other side agree if there were a rule that would be enough. He agrees that if a specific judge, and this is on page 10 of the supplemental brief, if a particular court had an order in a given case, then the court likely could deny a request solely because it was made after that deadline. So everybody agrees that if there is a deadline, that's enforceable. So the next question then goes back to the AEDPA question in this case. I mean, this is not a de novo review case. This is a case of whether the Supreme Court has ever held that a morning of trial request or that something after weeks before trial is going to be a violation of the Sixth Amendment right. And to return to that White v. Woodhull language that I was mentioning earlier, the Supreme Court mentioned that if and only if it is so obvious that a clearly established rule applies to a given set of facts, that's the only circumstance under which habeas relief is appropriate. And it can't be the case that a rule clearly applies to a given set of facts when the Supreme Court's holding limits the factual situation it applies to. So that Faretto limits it to weeks before trial,  Well, does Faretto limit it to weeks before trial or is Faretto decided in the context that it was weeks before trial? I again think it is limited. It says under these circumstances and this court and other courts have recognized that. I think in the Robart case, if I recall correctly, this court recognized that the number of times the Supreme Court referenced the weeks before trial element in the factual scenario that was present in Faretto was significant. Is there any case that says that in connection with the exercise of the state court's responsibilities within this gray area of two weeks to immediately before trial that there has to be a rule? There's certainly no U.S. Supreme Court case that says that. There's no case that says what timeline this is aside from Faretto two weeks before. There's no case that says there has to be a rule. I think that's correct, Your Honor. The other point I would like to make about the unreasonable determination of the facts argument here is, again, this is an EDPA case, and whether you're under D2 or under E1, the fact is to show there's an unreasonable application of the facts, you have to show something in the record that shows, I think in this context, that he was ready to go to trial. The Michigan Supreme Court said it would have been disruptive, so that's the factual finding of the Michigan Supreme Court. To overturn that, there has to be something affirmative in the record that shows that's unreasonable. There's nothing in this record that shows he was ready to go to trial. And under E1, he has to come forward with clear and convincing evidence. But even if you're under D2, we think the outcome is exactly the same. If he had not requested a continuance, wouldn't we infer then that he was ready to go to trial? That's the first question. And the second question I want to ask you is regarding the Feretta colloquy. If the court determined that his request for self-representation was untimely, was the court under Feretta still required to engage in the Feretta colloquy? So as to the first question about continuance, he never requested or didn't request a continuance. That component never arose because his request for self-representation was denied. So there's nothing in the record that affirmatively shows he would not have requested a continuance. And we're in the AEDPA context, so the factual findings are presumed to be correct. And so to overcome that presumably correct determination that it would have caused disruption, i.e., that it would have delayed the trial in some way. So the fact that he didn't request a continuance, we should construe that to say he was not ready for trial? I think when there's silence in the record on a factual point, then you can't construe it against the trial court or the state court's holding. The United States Supreme Court made this same point in Burt v. Titlow, this last term, where silence in the record could not be used as a basis for finding ineffective assistance of counsel. And that's what's going on here. They're saying silence in the record as to whether or not he was prepared is going to be a basis for saying that he was prepared and he could have gone forward and there would have been no delay. But silence in the record doesn't get construed in this context in the habeas petitioner's favor. It gets construed in favor of the Michigan Supreme Court, which made the factual finding to the contrary. Now, as to the second point, you remind me? Even if the court determined that it was untimely, was the court still required to engage to conduct the phoretic colloquy? Under AEDPA review, no. I mean, in de novo review, there may be a different question, but the Supreme Court has never held that. And to the extent that this court has suggested the other in Moore v. Haviland, again, this term, the United States Supreme Court, in Gleeb, faulted the Ninth Circuit and reversed it in the habeas case because it relied on its own cases to establish what was clearly established law. So the Ninth Circuit looked at one of its own precedents. Its own precedent said this issue is clearly established law. The Supreme Court reversed in Gleeb, saying don't look at your own precedent and see what's clearly established law. You have to look at our cases, like the statute says. You did refer to the Moore case earlier and ask us to rely on Moore. I asked it for another proposition. It was for a different purpose. Really what you're saying is that the Sixth Circuit decisions are binding only if they're adverse to the habeas petitioner. Not at all, Your Honor.  Not at all, because there's other cases before Moore v. Haviland that also made the same point about them being mutually exclusive. So that's not a case, that's not a point that was made for the first time in the Moore v. Haviland decision. So I could totally not rely on any part of Moore, and I would still have Sixth Circuit case law that supports that. And I think we cited it in our brief, and the name of it is escaping me. But there is case law in effect. But the point, the basic point that you can, that you're telling us to look at Sixth Circuit cases if they're adverse to a habeas petitioner, but not to look at them if they're favorable to a habeas petitioner, because they're not binding Supreme Court. In one sense, I am saying that. And here's the sense that I'm saying that. Under the, for a habeas petitioner to prevail, he has to be able to point to clearly established federal law as determined by the Supreme Court. So the statute says he has to point to a Supreme Court case. On the other side, we prevail if we can show that a fair-minded jurist would agree with our position, or with the position of the state court. So if we can point to other fair-minded jurists that reach the conclusion that supports the state court decision, then that I would think would tend to support the fact that it is reasonable. It would tend to, but at least in principle, if he points correctly to a Supreme Court precedent that's clearly established, you could just say, well, if the Sixth Circuit was so wrong, they weren't fair-minded. Right? I mean, it's not binding. The counter Sixth Circuit precedent wouldn't be binding in the face of a panel willing to rule that there really is clearly established law. Right. Unless there are any further, well, I guess I'm out of time. Thank you, Your Honors. Okay. Thank you, Mr. Lins. Thank you, Your Honors. A few points. Your Honors, Feretta does not establish a timing requirement. The court in Feretta, like the court in virtually every opinion, any court rights, refer to the specific circumstances there. But if you look at later decisions by the Supreme Court itself describing its holding in Feretta, time and again it makes no mention of a timing requirement. Is that correct, Counsel? How about Martinez at page 161 of the opinion? The Supreme Court says, as the Feretta opinion recognizes, the right of self-representation is not absolute. The defendant must voluntarily and intelligently elect to conduct his own defense, comma, and most courts require him to do so in a timely manner. And then they cite a collection of cases. So in Martinez, I recognize this is not the holding of the case. But there they say that Feretta requires a voluntary and intentional election and most courts require him to do so in a timely manner. Yes, not referring to the holding of Feretta, number one, but to what most courts require. Number two, as we point out in our supplemental. At least in dicta, they recognize it must be made in a timely manner. You have to cite to us a Supreme Court case which clearly established federal law that this request for counsel was timely. And what Supreme Court case do you cite for us? What I cite, Your Honor, is the rule which the warden agrees with from Feretta and from Martinez that you cannot deny the right to represent yourself when it's made in a knowing and voluntary manner unless there is a sufficient government interest. And here there is none. Timeliness alone, the warden does not disagree that timeliness alone, in the absence of a preexisting rule, is a sufficient government interest in itself. At that point, you said that there are a lot of courts that recognize this bright line between when he brought the potential jurors in and that once things have started. Now, in those cases, there was no preexisting rule. But it's not timeliness in that sense, Your Honor. The reason that that bright line rule is created is because then you have the disruption that flows from jurors. The premise of my question is that what seems very similar to me is timeliness and disruption are linked, and it's just as disruptive and untimely when you do it the day of trial as it is an hour after you've brought the veneer in. In the latter situation, there was no preexisting rule to warn people of. There was common sense. And here, it seems to me, there's a similar problem, common sense. Well, I think I'm on the side of common sense as well, Your Honor, but let me explain why. As I said before, the difference is you don't have the disruption. You can't just say the timing itself creates disruption. The disruption that flows from having a request made after the jurors have entered the courtroom is you then have the confusion, the possible confusion, the Fifth Circuit said this in the Chapman case we cite, of jurors having initially seen the defendant, represented by counsel, and then the switch to representing himself. You have the possibility of them being distracted by the evidence. You have the burden on the judge of having to explain to the jurors what's going on, why there's a switch. Those are the specific disruptions, and you need to point to a specific disruption in order to say you have a sufficient government interest. What Supreme Court case holds that? Your Honor, there is none, but that doesn't mean... In a habeas epta case, you have to point to us a Supreme Court decision that clearly establishes the federal law, and you just told me you have no such case. No, Your Honor, I need to be very clear about this. The clearly established law, which both parties agree on, is that you cannot deny a Faretto request absent a sufficient government interest in doing so. This is an application of that rule. I do not, Your Honor, with all respect, have to cite a Supreme Court case directly on point. That is the warden's position, but it reads unreasonable application out of the statute. The Supreme Court has said in Panetti v. Quarterman, we cited in our brief, that a federal habeas court does not have to be confronted with facts virtually identical to those in a previous Supreme Court case in order to find an application unreasonable. Your Honors, if I could sum up. Not all morning of trial requests are created equal. There is only one appellate court in the country that has said that they are, and that is the only appellate court in the country, I submit, that would have upheld the denial of Mr. Hill's request under the circumstances under which it was made and the circumstances under which it was denied. And if I could run through those very quickly. And that, by the way, is how you get to the point of saying this was objectively unreasonable, Your Honor. Decades of Faretto case law, only one court in the country would have upheld the request in these circumstances. And what are those circumstances? First of all, before trial. Minutes before trial, yes. But before trial. Second of all, no request for a delay by the defendant. No history of delays. This case, as Judge Donald indicated, moved very quickly. Two months from the initial arraignment until the morning of trial. No inquiry by the trial court. Not a single question. That is one of the most striking things here, Your Honor. I think it distinguishes it from every other Faretto case I've seen. And certainly all the circumstances together distinguish this case from any of the many Faretto cases that I have seen. Fourth, a very simple prosecution. This case, the total testimony lasted three hours. There was no expert testimony. The prosecution put in a total of three exhibits. So this is a situation in which the defendant could have come in on that day of trial and been told, as happened in the Pleasant case that the warden cites in her brief, I will grant your request, but you may not have a continuance. And so there's simply no basis for finding gamesmanship. When you put all those factors that I just listed together, Your Honor, I submit relief is required here. Thank you. Okay. Thank you, Mr. Volchak. And the court would like to thank both counsel for your arguments today. And specifically, Mr. Volchak, we note that you've taken this case under the Criminal Justice Act. For that, your client has been benefited, as has the system at large. And we'd like to thank you for taking the case. Thank you, Your Honors. Thank you both. The case will be submitted.